UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| HANS BRUNS, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | 1:12-cv-00131-JAW |
| | ) | |
| MARY MAYHEW, Commissioner, | ) | |
| Maine Department of Health and | ) | |
| Human Services, | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER ON THE PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

Hans Bruns and Kadra Hassan ask the Court to certify this case, which alleges that Public Law 2011, chapter 380, section KK-4 is unconstitutional, as a class action. The Plaintiffs propose two groups of individuals they contend constitute the relevant class: (1) all noncitizens residing in Maine whose full MaineCare benefits terminated effective October 1, 2011 because of their alienage and immigration status and whose MaineCare benefits have not been reinstated, and (2) all noncitizens residing in Maine who in the future would be eligible for full MaineCare benefits, but for their alienage or immigration status. Mary Mayhew, the Commissioner of the Maine Department of Health and Human Services (DHHS), concedes that the first group should be certified but argues against the inclusion of the second group, asserting that its members lack Article III standing and that their inclusion in the class would be overbroad and thus would violate

Federal Rule of Civil Procedure 23(b)(2). The Court grants the Plaintiffs' motion for class certification but redefines the class slightly to include: "all non-citizens residing in Maine (1) whose state medical assistance benefits under Maine Statutes, title 22, section 3762(3)(B)(2) terminated effective October 1, 2011, because of their alienage and immigration status and who have not subsequently had their benefits reinstated, and (2) who applied for, or who will apply for MaineCare benefits and were or will be denied those benefits due to their alienage or immigration status."

## I.    BACKGROUND

### A.    Procedural Background

On April 4, 2012, Mr. Bruns filed a class action complaint against Ms. Mayhew in her official capacity as the Commissioner of Maine DHHS. *Class Action Compl. for Declaratory and Inj. Relief* (ECF No. 1) (*Compl.*). The Complaint was amended on December 7, 2012 to join an additional Plaintiff, Kadra Hassan, in the action. *First Am. Class Action Compl. for Declaratory and Inj. Relief* (ECF No. 25) (*Am. Compl.*). The Commissioner responded to the Plaintiffs' Amended Complaint on December 19, 2012. *Def.'s Answer to First Am. Compl.* (ECF No. 27) (*Def.'s Answer*). On April 4, 2012, the Plaintiffs moved for class certification, *Pls.' Mot. for Class Certification* (ECF No. 4) (*Pls.' Mot.*), and for a preliminary injunction, *Pls.' Mot. for Prelim. Inj.* (ECF No. 5). The Commissioner moved to dismiss the Plaintiffs' initial Complaint pursuant to Rule 12(b)(6) on May 11, 2012, *Def.'s Mot. to Dismiss* (ECF No. 12), and opposed the Plaintiffs' motions for class certification

and preliminary injunction. *Def.'s Opp'n to Pls.' Mot. for Class Certification* (ECF No. 14) (*Def.'s Opp'n*); *Def.'s Opp'n to Pl.'s Mot. for Prelim. Inj.* (ECF No. 13).

On May 25, 2012, the Plaintiffs filed their opposition to the Commissioner's motion to dismiss. *Pls.' Opp'n to Def.'s Mot. to Dismiss* (ECF No. 17). They also replied to the Commissioner's opposition to the motions for class certification and preliminary injunction. *Pls.' Reply Mem. in Supp. of Class Certification* (ECF No. 15) (*Pls.' Reply*); *Pls.' Reply Mem. in Supp. of Prelim. Inj.* (ECF No. 16). On November 20, 2012, the Court dismissed the Commissioner's motion to dismiss without prejudice. *Order on Commissioner's Mot. to Dismiss* (ECF. No. 19). The Court also denied the Plaintiffs' motion for preliminary injunction without prejudice on March 14, 2013. *Order on the Pls.' Mot. for Prelim. Inj.* (ECF No. 34) (*Order*).

## B.   The Allegations

Medicaid is a jointly funded state and federal program that provides medical assistance to low-income individuals. *Am. Compl.* ¶ 26. In 1973, the Maine Legislature enacted Aid to Needy Persons, Public Law 1973, chapter 790, codifying its decision to provide Medicaid coverage to all qualified individuals regardless of their immigration status and alienage. *Id*. The state of Maine's Medicaid program is called MaineCare and Maine DHHS is responsible for administering MaineCare to Maine residents. *Id*.

In 1996, Congress changed the eligibility requirements for federal Medicaid with its enactment of the Personal Responsibility and Work Opportunity Reconciliation Act of 1996 (PRWORA), Public Law No. 104-193, 110 Stat. 2105

(1996).  *Id.* ¶ 27.  PRWORA divided noncitizens into two groups for Medicaid eligibility: qualified and non-qualified aliens.  *Id.*  Qualified aliens include lawful permanent residents and certain other specified groups of individuals, such as asylees and refugees.  *Id.*

The Act further divided qualified aliens into two groups for Medicaid eligibility based upon the length of an alien's residency in the United States.  *Id.* The law generally made Medicaid benefits unavailable to qualified aliens residing in the United States after August 22, 1996 until the aliens had resided in the United States for at least five years with qualifying status.  *Id.*  Nevertheless, the law provided that these Medicaid-ineligible noncitizens could receive medical assistance for care and services required to treat emergency medical conditions.  *Id.* ¶ 28.

PRWORA also authorized states to decide whether to provide health benefit services to Medicaid-ineligible qualified aliens residing within their borders.  *Id.* ¶ 29.  In response, in 1997, the Maine Legislature voted unanimously to pass Temporary Assistance to Needy Families (TANF), Public Law 1997, chapter 530, section A-16 (codified at Maine Statutes, title 22, section 3762(3)(B)(2)), which provided state-funded health benefit coverage to all legal noncitizens "'who would be eligible for the TANF or Medicaid programs but for their status as aliens under PRWORA.'"  *Id.* ¶ 30.  However, in June 2011, the Maine Legislature passed Public Law 2011, chapter 380, section KK-4, which terminated Medicaid-ineligible aliens' health benefit coverage under the 1997 law.  *Id.* ¶ 31.  Maine DHHS implemented

4

this new law through emergency rulemaking on September 1, 2011 and adopted it permanently as of December 5, 2011. *Id.*

### 1.   Hans Bruns

Hans Bruns resides in Fort Fairfield, Maine. *Id.* ¶ 10. Mr. Bruns became a United States lawful permanent resident on December 16, 2007. *Id.* ¶¶ 10, 32. He is indigent and, because of his low income, cannot afford to pay for private health insurance. *Id.* ¶ 32. Sometime in December 2010, Mr. Bruns began to receive health insurance benefits through the state of Maine. *Id.* On September 1, 2011, DHHS sent form termination notices to approximately five hundred noncitizens living in Maine, including Mr. Bruns, informing them that their state-funded coverage was being reduced to emergency care only. *Id.* ¶ 4. The State terminated Mr. Bruns' benefits on October 1, 2011. *Id.* ¶ 34.

After experiencing pain on the right side of his face for more than a year and seeking treatment for a mass on the right side of his neck, Mr. Bruns was diagnosed in late 2011 or early 2012 with adenoid cystic carcinoma of the right parotid gland and an apparent lesion in his lung. *Id.* ¶¶ 11, 33. Mr. Bruns experiences extreme pain and suffering, which has impacted his ability to sleep, hear, and swallow because of the large cancerous tumor in his neck. *Id.* ¶ 1.

Without full MaineCare benefits, Mr. Bruns has been unable to afford medical care required to cure his condition, which includes services such as MRI imaging, resection of the lesion, radiation, and chemotherapy. *Id.* ¶¶ 1, 11 35. Emergency care benefits under the State's current MaineCare program could not

provide Mr. Bruns with the necessary medical services to treat his condition. *Id.* ¶ 10. Because Mr. Bruns did not receive a timely diagnosis and treatment for his cancer, he is now terminally ill and receiving hospice care. *Id.* ¶ 1.

### 2. Kadra Hassan

Ms. Hassan was admitted to the United States as a non-immigrant on December 25, 2010 and is awaiting a decision on her asylum application. *Id.* ¶ 36. She has lived in Maine for several years and currently resides in Lewiston. *Id.* ¶ 12. Ms. Hassan suffers from Stage 5 Kidney Disease (End Stage Renal Disease) and requires kidney dialysis several times per week, prescription medications, and regular primary care physician visits, among other things. *Id.* ¶¶ 13, 36. Ms. Hassan goes to kidney dialysis treatment several times a week. *Id.* ¶ 2. Like Mr. Bruns, Ms. Hassan also requires medical care and treatment but cannot afford to pay for that care without state subsidy. *Id.* ¶ 36. In January 2012, Ms. Hassan applied and was found eligible for MaineCare benefits but was limited to emergency MaineCare benefits by Maine DHHS due to her immigration status. *Id.* ¶ 37. Without treatment, specifically dialysis and a kidney transplant, Ms. Hassan's condition will ultimately result in her death. *Id.* ¶ 36. Although she has been recommended for a kidney transplant, Ms. Hassan was turned down for the operation because of her lack of health insurance coverage. *Id.* ¶ 13.

## II. THE PARTIES' POSITIONS

### A. The Plaintiffs' Motion for Class Certification

First, the Plaintiffs assert that joinder of all members is impracticable because their proposed class contains approximately 500 individuals. *Pls.' Mot.* at 4-5. They argue that the diversity in the proposed class members' geographic locations and spoken languages further underscores the impracticability of joinder. *Id.* at 5. Next, the Plaintiffs point out that common questions of law and fact predominate—specifically whether Maine DHHS violated the class members' right to equal protection. *Id.* at 6. They also contend that their claims are typical of the class because, like their proposed class members, the Plaintiffs' access to state-funded health care was either terminated or denied by the Commissioner pursuant to Maine's 2011 law. *Id.* at 6-7.

Further, the Plaintiffs claim that they will fairly and adequately protect the interests of the class because their interests coincide with the other members and they have retained qualified counsel. *Id.* at 7. Finally, the Plaintiffs point to the Commissioner's enforcement of the 2011 Maine law as evidence that she acted or refused to act on grounds that apply generally to the proposed class. *Id.* at 8. Fundamentally, they argue, "[w]ithout class certification, there would be no systemic change . . . resulting in individual class members bringing the exact same claims as Mr. Bruns in order to obtain the same relief." *Id.*

### B.   The Commissioner's Opposition

The Commissioner first argues that the Plaintiffs' "proposed class definition is considerably overbroad, and at the same time imprecise." *Def.'s Opp'n* at 1. She concedes that the first group in the Plaintiffs' proposed class—individuals whose

state-funded medical benefits were terminated on October 1, 2011—satisfies Rule 23's class requirements. *Id.* Yet, she argues that the second group—people who in the future would be eligible for state-funded medical benefits but for their alienage and immigration status—is too broad and cannot show an injury in fact, i.e., the receipt and subsequent loss of the state-funded medical benefits at issue. *Id.* at 1-2, 5.

Further, the Commissioner argues that the second group of the Plaintiffs' proposed class cannot satisfy Rule 23(b)(2) because Maine DHHS did not act in the same manner with respect to both groups. *Id.* at 7. Regarding the first group, the Plaintiffs challenge Maine DHHS's action, specifically the termination of state-funded medical benefits. *Id.* With respect to the second group, the Commissioner argues, the Plaintiffs are complaining of Maine DHHS's inaction—its failure to provide state-funded medical benefits after the passage of the 2011 law. *Id.* She highlights the Plaintiffs' request for separate relief for the class's two groups as evidence of this distinction. *Id.*

The Commissioner also requests that the Court modify the Plaintiffs' proposed class to exclude its reference to "MaineCare benefits" because she claims that was not the program that administered benefits to Mr. Bruns or his proposed class. *Id.* at 2, 8. Ultimately, the Commissioner requests that the Court define the relevant class as "all non-citizens residing in the State of Maine whose state medical assistance benefits under ME. REV. STAT. tit. 22, § 3762(3)(B)(2) terminated

effective October 1, 2011 due to their immigration status and who have not subsequently had those medical assistance benefits reinstated." *Id.*

### C.   The Plaintiffs' Reply

The Plaintiffs dispute the Commissioner's argument about the overbreadth of their proposed class because they insist that individuals in the second group "are in the exact same legal position as those whose benefits were terminated on October 1, 2011." *Pls.' Reply* at 1.  They assert that to draw a line between the two groups would contravene class action jurisprudence because "[c]onsideration and inclusion of those who will in the future suffer the identical injury is a factor that supports the numerosity requirement of Rule 23." *Id.* at 3-4.  Further, the Plaintiffs state that "in the event [the] Court finds necessary, [they] support amending the class definition to include those who in the future apply for and are denied full MaineCare benefits solely due to their alienage or immigration status." *Id.* at 4.

Next, with respect to the Commissioner's Rule 23(b)(2) argument, the Plaintiffs contend that "[t]he denial of full MaineCare [benefits] is certainly *action*." *Id.* at 5 (emphasis in the Plaintiffs' Reply).  Thus, they assert that their proposed class satisfies Rule 23(b)(2).  *Id.*  Further, the Plaintiffs argue that "MaineCare" should not be excluded from their proposed class definition because it is improper at this stage in the case for the Court to inquire into the merits of the Plaintiffs' claims.  *Id.* at 6.

## III.   DISCUSSION

### A.   Legal Standard for Class Certification

"Decisions on class certification must rest on rigorous analysis . . . ." *Gintis v. Bouchard Transp. Co.,* 596 F.3d 64, 66 (1st Cir. 2010).  Before the Court may certify the Plaintiffs' class, the Plaintiffs must satisfy each of Rule 23(a)'s requirements:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

FED. R. CIV. P. 23(a).  The proposed class must also satisfy one of the criteria under Rule 23(b).  *Smilow v. Sw. Bell Mobile Sys.*, 323 F.3d 32, 38 (1st Cir. 2003) ("To obtain class certification, the plaintiff must establish the four elements of Rule 23(a) and one of several elements of Rule 23(b)").  In this case, the Plaintiffs rely upon Rule 23(b)(2), which requires them to show that the Commissioner "has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief . . . is appropriate respecting the class as a whole."  FED. R. CIV. P. 23(b)(2).

"Rule 23 does not set forth a mere pleading standard.  A party seeking class certification must affirmatively demonstrate his compliance with the Rule - - that is, he must be prepared to prove that there are in fact sufficiently numerous parties, common questions of law or fact, etc."  *Wal-Mart Stores, Inc. v. Dukes,* 131 S. Ct. 2541, 2551 (2010); *see Smilow*, 323 F.3d at 38.  "The Court is under an independent obligation to test for 'actual, not presumed, conformance with Rule 23(a).'" *Rodriguez-Feliciano v. P.R. Elec. Power Auth*., 240 F.R.D. 36, 38 (D.P.R. 2007) (quoting *Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S 147, 160 (1982)).

Although the Court may not decide the merits of the case on a motion for class certification, when the legal and factual underpinnings of the Plaintiffs' case are in dispute, "the court 'may probe behind the pleadings' to 'formulate some predication as to how specific issues will play out' in order to assess whether the proposed class meets the legal requirements for certification." *In re New Motor Vehicles Can. Exp. Antitrust Litig.*, 522 F.3d 6, 17 (1st Cir. 2008) (quoting *Falcon*, 457 U.S. at 160); *Waste Mgmt. Holdings, Inc. v. Mowbray*, 208 F.3d 288, 298 (1st Cir. 2000)).   In exercising this duty, the Court "must evaluate the plaintiff's evidence . . . critically without allowing the defendant to turn the class-certification proceeding into an *unwieldly* trial on the merits." *In re PolyMedica Corp. Sec. Litig.*, 432 F.3d 1, 17 (1st Cir. 2005) (emphasis in original).   Nevertheless, the First Circuit recognizes that weighing whether to certify a class may inevitably involve some assessment of the merits because "[i]t would be contrary to the 'rigorous analysis of the prerequisites established by Rule 23 before certifying a class' to put blinders on as to an issue simply because it implicates the merits of the case." *In re New Motor Vehicles Can. Exp. Antitrust Litig.*, 522 F.3d at 17 (quoting *Smilow*, 323 F.3d at 38).

## B.   Application of Rule 23(a)'s Factors

### 1.   Numerosity

Numerosity is shown where the "the class is so numerous that joinder of all members is impracticable." FED. R. CIV. P. 23(a)(1).   In the First Circuit, although there is no minimum numerical requirement, a class of more than forty individuals

is sufficient to establish a presumption that joinder is impracticable. *Garcia-Rubiera v. Calderon*, 570 F.3d 443, 460 (1st Cir. 2009); *Van Meter v. Harvey*, 272 F.R.D. 274, 280 (D. Me. 2011). Further, "since this is an action for declaratory and injunctive relief against a government policy, the Court may also consider persons who might be injured in the future in the class." *Rancourt v. Concannon*, 207 F.R.D. 14, 15 (D. Me. 2002).

The parties agree that Maine DHHS sent state-funded benefit termination notices to approximately 500 noncitizens in September 2011. *Am. Compl.* ¶ 4; *see Def.'s Answer* ¶ 4 (admitting to the Plaintiffs' allegation). Also, a Maine DHHS memorandum documents that 1,389 Medicaid-ineligible individuals received state-funded MaineCare benefits in June 2011. *Pls.' Mot.* Attach 4-1, *Legal Non-Citizens MaineCare Coverage*, MAINE DHHS (June 2011) (ECF No. 4-1) (*June 2011 Memo*). Here, the Plaintiffs rely on actual numbers in the first group—statistics of individuals who received and lost state-funded benefits—rather than statistics related to unidentified members in the second group. *See Van Meter*, 272 F.R.D. at 280. Notably, "a Rule 23(b)(2) class need not precisely identify every class member." *Id.* (citing *Yaffe v. Powers*, 454 F.2d 1362, 1366 (1st Cir. 1972)). Thus, although the numbers in the Plaintiffs' proposed class will inevitably fluctuate due to PRWORA's five-year residency requirement, the documents provided to the Court establish that there are at least forty members currently in the Plaintiffs' proposed class. *See id.; Am. Compl.* ¶ 4.

Furthermore, the Court accepts the Plaintiffs' argument that other circumstances suggest that joinder is impracticable. *See Andrews v. Bechtel Power Corp.*, 780 F.2d 124, 131 (1st Cir. 1985) ("The facts and circumstances of each case are to be taken into account to determine numerosity under 23(a)(1)"). "[D]isability, confinement, and financial difficulty, and the inability of class members to bring their own separate actions have been found to be factors strongly weighing against the practicability of joinder." *Van Meter*, 272 F.R.D. at 282. Here, the Plaintiffs and their proposed class members are all recent immigrants to the United States who presumably, by virtue of their application for MaineCare, have limited financial resources. *See Pls.' Mot.* at 5; *June 2011 Memo.*

In addition, the Plaintiffs claim that their putative class members are geographically dispersed throughout the state of Maine and likely speak different languages. *Id.* A sensible inference could be drawn that the members of the Plaintiffs' proposed class live throughout the state of Maine and speak a number of languages. *See Risinger v. Concannon*, 201 F.R.D. 16 (D. Me. 2001) ("The geographic dispersion of these children throughout the state of Maine and the practical difficulties with identifying and formally joining all of these children and their parents persuade the Court that joinder is impracticable under Rule 23(a)(1)"). However, the Plaintiffs' contention remains an assertion; the record itself contains no evidence about where the proposed members of the Plaintiffs' class live and what languages they speak. The Court does not reach whether the Plaintiffs' unsupported assertions about geography and language, standing alone, would

13

support the Plaintiffs' burden because the other factors are sufficient to demonstrate the impracticability of joinder. *See Van Meter*, 272 F.R.D. at 282.

The Commissioner does not attempt to undermine the Plaintiffs' numerosity argument or their cited statistics; instead, she attacks the Plaintiffs' definition of the second group as overbroad and imprecise. *Def.'s Opp'n* at 1, 5-6. Although relevant to the Rule 23(a) analysis, the Court addresses this point in its typicality discussion. *See Van Meter*, 272 F.R.D. at 280. Because the number of putative class members surpasses the forty-person threshold and their limited finances suggest that joinder would be impracticable, the Court concludes that the Plaintiffs' proposed class satisfies Rule 23(a)(1)'s numerosity requirement.

2.      **Commonality**

Commonality requires the Plaintiffs to establish that "there are questions of law or fact common to the class." FED. R. CIV. P. 23(a)(2). In *Dukes*, the United States Supreme Court refined this inquiry by stating, "What matters to class certification . . . is not the raising of common 'questions' - - even in droves - - but rather the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation." 131 S. Ct. at 2551 (internal citations omitted) (emphasis in original). The Plaintiffs' "claims must depend upon a common contention . . . [and] that common contention [ ] must be of such a nature that is capable of classwide resolution - - which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the clams in one stroke." *Id.*

Here, each group of the Plaintiffs' proposed class attacks Maine DHHS's implementation of Maine Public Law 2011, chapter 380, section KK-4 as a violation of the Equal Protection Clause. *Am. Compl.* ¶ 6; *Pls.' Mot.* at 2-3. Accordingly, if each class member brought a separate lawsuit on his or her behalf, the Court would be presented with the same issue: whether Maine's 2011 law violates the Equal Protection Clause. The Court would be required to evaluate the MaineCare program and to determine whether each proposed class member received benefits from that program or some other state-funded program. Based on the allegations in the Complaint and documents before the Court, the Plaintiffs have presented the Court with a "common contention" which is "capable of classwide resolution." *See Dukes*, 131 S. Ct. at 2551. The Court concludes that the Plaintiffs have established "commonality."

### 3.     Typicality

Under Rule 23(a)(3), a plaintiff establishes typicality if "the claims or defenses of the representative parties are typical of the claims or defenses of the class." FED. R. CIV. P. 23(a)(3). "The representative plaintiff satisfies the typicality requirement when its injuries arise from the same events or course of conduct as do the injuries of the class and when plaintiff's claims and those of the class are based on the same legal theory." *Campbell v. First Am. Title Ins. Co.*, 269 F.R.D. 68, 75 (D. Me. 2010) (quoting *In re Credit Suisse-AOL Sec. Litig.*, 253 F.R.D. 17, 23 (D. Mass. 2008)). Fundamentally, "[t]he purpose of the typicality requirement is to 'align the interests of the class and the class representatives so that the latter will

15

work to benefit the entire class through the pursuit of their own goals.'" *Manson v. GMAC Mortg., LLC*, 283 F.R.D. 30, 38-39 (D. Mass. 2012) (quoting *In re Prudential Ins. Co. of Am. Sales Practice Litig.,* 148 F.3d 283, 311 (3d Cir. 1998)).

First, when assessing "typicality", the Court must address the Commissioner's standing argument to ensure that "[t]he representative's claims [are] typical of those being asserted by class members." 7AA Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, Federal Practice and Procedure § 1760 at 386 (3d ed. 2005). Again, the first classification—individuals whose state-funded medical benefits were terminated on October 1, 2011—is non-controversial and satisfies the typicality requirement. It is the second proposed classification—people who in the future would be eligible for state-funded medical benefits but for their alienage and immigration status—that poses a problem.

The issue is whether a class definition based on future eligibility, not application, includes individuals who, though eligible for state-funded benefits, never apply and therefore will never suffer an injury. In terms of the law, the inclusion of individuals who have not and will not sustain an injury presents an Article III standing issue. For those class members who will not sustain an injury, the Commissioner argues that the proposed class's second group lacks standing because it contains "individuals who did not receive and lose the medical assistance benefit here [and therefore they] have not suffered a 'concrete and particularized injury.'" *Def.'s Opp'n* at 5-6 (citing *Nat'l Org. for Marriage v. McKee*, 649 F.3d 34, 46 (1st Cir. 2011)). Although the Plaintiffs minimize the Commissioner's concern as

16

being "one of semantics", they concede that "in the event the Court finds necessary, [they] support amending the class definition to include those who in the future apply for and are denied full MaineCare benefits solely due to their alienage or immigration status." *Pls.' Reply* at 4.

The Court agrees with the Commissioner that absent a more precise definition for the members in the second group of the Plaintiffs' proposed class, some  members of that group lack standing. *Katz v. Pershing, LLC*, 672 F.3d 64, 71-72 (1st Cir. 2012) (describing Article III standing in class actions as requiring plaintiffs to show (1) they have suffered an injury in fact, (2) causation, and (3) redressability).  The Plaintiffs' current definition for the second group—noncitizens "who in the future would be eligible for full MaineCare benefits, but for their alienage and immigration status"—is too broad and fails to evidence an injury in fact. *See In re Light Cigarettes Mktg. Sales Practices Litig.*, 271 F.R.D. at 419 ("'[I]f the definition is so broad that it sweeps within it persons who could not have been injured by the defendant's conduct it is too broad'") (quoting *Kohen v. Pacific Inv. Mgmt. Co.*, 571 F.3d 672, 677 (7th Cir. 2009)).   An injury in fact is defined as "an invasion of a legally protected interest which is (a) concrete and particularized; and (b) actual or imminent, not conjectural or hypothetical." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (internal citations and quotations omitted). "Particularity demands that a plaintiff must have personally suffered some harm." *Katz*, 672 F.3d at 71.

Given that the Plaintiffs' original definition of the second group inevitably includes some Medicaid-ineligible noncitizens who may never require or apply for state-funded medical benefits, the Court adopts the revised definition proposed by the Plaintiffs in their Reply.  The Court also amends the Plaintiffs' definition of the second group to read: "or (2) who applied for, or who will apply for MaineCare benefits and were or will be denied those benefits due to their alienage or immigration status."[1]  *See Pls.' Reply* at 4.  To be included in the action, class members will have to have suffered an injury that is "(a) concrete and particularized; and (b) actual or imminent, not conjectural or hypothetical."[2]  *Lujan*, 504 U.S. at 560.

Further, based on the allegations in the Amended Complaint, Ms. Hassan's claims and defenses would be typical of the newly defined second group.  Ms. Hassan is a Medicaid-ineligible qualified alien who applied for MaineCare benefits in 2012 and was denied those benefits due to her immigration status.  *Am. Compl.* ¶

---

[1]     In her opposition memorandum, the Commissioner supports the redefinition of group two noting that that "the remedy for [the standing] problem[] is not necessarily denial of plaintiff's motion" and quoting *Robidoux v. Celani*, 987 F.2 931, 937 (2d Cir. 1993) for the proposition that "[a] court is not bound by the class definition proposed in the complaint and should not dismiss the action simply because the complaint seeks to define the class too broadly."  *Def.'s Opp'n* at 4.

[2]     PRWORA's five-year residency requirement and Maine's direct application of the 2011 law to noncitizens in Maine combine to create a fluctuating group of individuals whose legal status in the United States changes over time.  Nevertheless, the inclusion of future applicants who will suffer an injury in fact because of the 2011 law in the Plaintiffs' class definition remains valid.  In fact, courts in this district have included future beneficiaries in class definitions.  *See Van Meter*, 272 F.R.D. at 276, 284 (granting certification for a class defined as "Name Plaintiffs . . . and all other Maine residents who currently are or in the future will be: (1) eligible for and enrolled in MaineCare . . . ."); *Rancourt*, 207 F.R.D. at 16 (certifying a class including "All developmentally disabled individuals who: (1) are current or future recipients of Medicaid in the State of Maine . . . .").  Notably, "[i]f [a] plaintiff can show that there is a possibility that [a] defendant's conduct may have a future effect, even if injury has not yet occurred, the court may hold that standing has been satisfied." 7AA CHARLES ALAN WRIGHT, ARTHUR R. MILLER, & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 1760 at 390 (3d ed. 2005).

2; *Def.'s Answer* ¶ 2.  Along with her fellow class members, Ms. Hassan contends that the Commissioner violated her equal protection rights by denying her MaineCare benefits and enforcing Maine's Public Law 2011, chapter 380, section KK-4, which deprives her of state-funded medical benefits.  *Am. Compl.* ¶ 5.  Accordingly, Ms. Hassan's injury arises from the same event and her claims are based on the same legal theory as her fellow class members.  *Campbell,* 269 F.R.D. at 75.  Mr. Bruns' injury also stems from the Commissioner's enforcement of Maine's 2011 law and he asserts the same Equal Protection Clause challenge as the other members of the proposed class's first group.[3]  *See Am. Compl.* ¶ 1; *Def.'s Answer* ¶ 1; *Pls.' Mot.* at 6-8.  Thus, the Court is satisfied that given the new definition of the class's second group, the Plaintiffs have established typicality.

### 4.   **Adequacy**

Adequacy of representation is satisfied where "the representative parties will fairly and adequately protect the interests of the class."  FED. R. CIV. P. 23(a)(4).  To establish adequacy of representation, the Plaintiffs must show both (1) "'that the interests of the representative party will not conflict with the interests of any of the class members" and (2) "that counsel chosen by the representative party is qualified, experienced and able to vigorously conduct the proposed litigation.'"  *Andrew,* 780 F.2d at 130.  Here, the interests of the two class representatives, Mr. Bruns and Ms. Hassan, will not conflict with the interests of their fellow class members as they all seek to invalidate Maine's Public Law 2011, chapter 380,

---

[3]      In her opposition, the Commissioner notes that "[f]or the purposes of this motion, defendant accepts the Complaint's allegations regarding plaintiff Hans Bruns."  *Def.'s Opp'n* at 3 n.1.

section KK-4 and receive state-funded medical benefits through MaineCare until they qualify for federal benefits.[4]  *See Am. Compl.* ¶ 6.  The Court recognizes that the Plaintiffs' "willingness to bring the initial suit indicates that they are motivated to achieve such relief." *Van Meter*, 272 F.R.D. at 283.

Further, the Plaintiffs' attorneys are very "qualified, experienced and able to vigorously conduct the proposed litigation.'"  *Andrew*, 780 F.2d at 130.   The attorneys have submitted declarations, which detail their skill and experience in the areas of civil litigation and immigration law.  *Pls.' Mot.* Attach 3, *Decl. of Jennifer A. Archer* (ECF No. 4-3); *Pls.' Mot.* Attach 4, *Decl. of Jack Comart* (ECF No 4-4); *Pls.' Mot.* Attach 5, *Decl. of Zachary L. Heiden* (ECF No. 4-5).  Based on an assessment of the Plaintiffs' interests and the attorneys' declarations, particularly in the absence of any objection by the Commissioner, the Court is satisfied that the Plaintiffs and their attorneys meet the adequacy standard.

## C.    Rule 23(b)(2)

After satisfying all of Rule 23(a)'s perquisites, the Plaintiffs must surmount one last hurdle and establish that the Commissioner "has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief . . . is appropriate respecting the class as a whole."  FED. R. CIV. P. 23(b)(2).  In *Yaffe v. Powers*, the First Circuit explained that in the context of Rule 23(b)(2) "the conduct

---

[4]       As noted in the Court's Order on the Plaintiff's motion for preliminary injunction, Mr. Bruns is now terminally ill and may qualify for federal-state funded MaineCare benefits because he gained lawful permanent residence on December 16, 2007.  *Order* at 28 n.10.  Nevertheless, because the parties have not addressed this issue and the Court does not know whether Mr. Bruns has met PRWORA's requirements—maintaining qualifying status for five years after becoming a lawful permanent resident—it bases its decision on the documents filed with the Court, which are sufficient for Mr. Bruns to establish standing as a class representative.  *See* 8 U.S.C. § 1613(a).

complained of is the benchmark for determining whether a [ ] class exists, making it uniquely suited to civil rights actions in which members of the class are often incapable of specific enumeration." 454 F.2d at 1366 (internal citation omitted).

Here, the Plaintiffs complain of the same conduct and assert one constitutional violation—the Commissioner's enforcement of Public Law 2011, chapter 380, section KK-4, which eliminated state-funded benefits for Medicaid-ineligible qualified aliens. *Am. Compl.* ¶¶ 5-6. Accordingly, the Plaintiffs ask the Court to grant "(1) a declaration [ ] that Defendant's denial of MaineCare to noncitizens on the basis of their alienage or immigration status while continuing to provide such benefits to similarly situated United States citizens violates the Equal Protection Clause of the United States Constitution, and (2) a preliminary injunction against operation of P.L. 2011, ch. 380, § KK-4." *Id.* ¶ 6.

The Commissioner asserts that because the Plaintiffs' proposed class includes future members, Rule 23(b)(2) bars certification because the Commissioner's "unconstitutional" behavior applies differently to each group. *Def.'s Opp'n* at 7-8. With respect to the first group, she asserts that the Plaintiffs challenge her action, whereas they challenge her inaction with respect to the second group since the state-funded benefit is no longer available. *Id.*

The Court is not persuaded by the Commissioner's argument. Given the revised definition of group two, the Commissioner's behavior with respect to each Plaintiff clearly requires "action"—the enforcement of Maine's 2011 law and the denial of MaineCare benefits. Also, contrary to the Commissioner's view, the

Plaintiffs have established that their requested injunctive relief is appropriate for all class members because an injunction declaring the 2011 Maine law unconstitutional would presumably restore benefits to the class's first group and finally allow the second group to obtain state-funded medical benefits. *See Def.'s Opp'n* at 7.

In *Van Meter*, the Court concluded that "[i]f the putative class members were to proceed on an individual basis, they might obtain the individual services they seek without obtaining systemic changes to DHHS's conduct that would benefit the class as a whole, a result that could lead to countless individual claims seeking the exact same relief." 272 F.R.D. at 283-84. The same principle applies here. The only way to ensure an efficient judicial remedy that addresses the common concerns voiced by the Plaintiffs' proposed class members is to allow class certification. *Dionne v. Bouley*, 757 F.2d 1344, 1356 (1st Cir. 1985). The Court deems Rule 23(b)(2)'s requirements satisfied.

As the Plaintiffs have satisfied both Rule 23(a) and (b)'s requirements, their motion for class certification is granted subject to the revised class definition contained herein.

### D.   MaineCare vs. Maine Statutes, Title 22, Section 3762(3)(B)(2)

Regardless of the Court's ultimate decision on the Plaintiffs' motion for class certification, the Commissioner asks the Court to change the Plaintiffs' reference to "full MaineCare benefits" in their definition of the class to "state medical assistance benefits under Me. Rev. Stat. tit. 22, § 3762(3)(B)(2)" because "it is inaccurate to

22

characterize the benefits previously received by plaintiffs and similarly situated aliens as 'MaineCare' benefits." *Def.'s Opp'n* at 8.  The Plaintiffs argue that making this change at this point in the litigation would be inappropriate because it "begs the legal question at issue in this case: whether the Plaintiffs are entitled to the same benefits under the State's Medicaid program as citizens are entitled to receive." *Pls.' Reply* at 6.

The Court must critically analyze the evidence underlying the Plaintiffs' motion; however, it cannot allow "the defendant to turn [ ] class-certification into an *unwieldly* trial on the merits." *In re PolyMedica Corp. Sec. Litig.*, 432 F.3d at 17 (emphasis in original).   Nevertheless, "[i]t would be contrary to the 'rigorous analysis of the prerequisites established by Rule 23 before certifying a class' to put blinders on as to an issue simply because it implicates the merits of the case." *In re New Motor Vehicles Can. Exp. Antitrust Litig.*, 522 F.3d at 17 (quoting *Smilow*, 323 F.3d at 38).  Given the Court's conclusion that the Plaintiffs received benefits from a program other than MaineCare in its Order on the Plaintiffs' motion for preliminary injunction, the Court may alter the class definition to accurately reflect the benefits each group in the class applied for or received.  *See Order* at 23-26.  Making this change does not automatically resolve the ultimate issue in this case: whether elimination of state-funded medical assistance benefits under Maine Statutes, title 22, section 3762(3)(B)(2) by Public Law 2011, chapter 380, section KK-4 was unconstitutional and violated the proposed class's equal protection rights.  Further,

it does not resolve whether there is some connection between MaineCare and Maine Statutes, title 22, section 3762(3)(B)(2).

Accordingly, the Plaintiffs' class definition moving forward shall be: "all noncitizens residing in Maine (1) whose state medical assistance benefits under Maine Statutes, title 22, section 3762(3)(B)(2) terminated effective October 1, 2011, because of their alienage and immigration status and who have not subsequently had their benefits reinstated, and (2) who applied for, or who will apply for MaineCare benefits and were or will be denied those benefits due to their alienage or immigration status."

## IV.   CONCLUSION

The Court GRANTS Mr. Bruns' Motion for Class Certification (ECF No. 4) as modified by the Court's new definition of the class.

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
CHIEF UNITED STATES DISTRICT JUDGE

Dated this 25th day of March, 2013

24